CLARK *v.* TILTON.

4-7244                                                178 S. W. 2d 649

Opinion delivered February 14, 1944.

Lee Seamster, for appellant.

G. T. Sullins and Rex W. Perkins, for appellee.

SMITH, J. On December 18, 1928, an agreement was entered into by and between the Board of Managers of the Water Plant of the City of Fayetteville, as party of the first part, and Allen Davis, John Butler, B. L. Lemley and ............................, as parties of the second part. It does not appear who the unnamed party of the second part was, for whose benefit this contract was made.

Under this agreement, party of the first part had agreed to permit parties of the second part, "To take water service from the main now commonly known as the 'Clear Creek Pumping Main' from a point near the Allen Davis crossing." Parties of the second part agreed to abide by and comply with all the rules, regulations and requirements of the party of the first part. It was provided that the service connection should be controlled by the party of the first part, and parties of the second part agreed collectively and individually "That they will not permit additional connections to be made to this line or permit the using of water through said lines, except where the same has been measured through meters which were installed by the City Water Plant, unless the said

additional connections be authorized by the party of the first part.''

The party of the first part is not a party to this litigation, and the question is, therefore, not presented whether party of the first part has consented to the connections hereinafter referred to. The right to annul this agreement was reserved by the party of the first part, if the source of the supply of water required that action, so that the contract was one for the sale of surplus water.

After obtaining this contract with the party of the first part, an agreement was signed by E. L. Romans, John E. S. Butler, Allen Davis and Ed. L. Clark, reading as follows:

''The undersigned parties hereby appoint Ed. L. Clark as manager of what is known as the Ed. Clark Water Line, running from the main to Clear Creek, as their agent for the purpose of transacting business with the City Water Plant, regarding repairs, new connections, discontinuance of service, or any other business necessary to be transacted between the parties hereto, and said agent has full power to act on all matters and his decision shall be final on all matters as a representative of the parties. In case Ed. L. Clark, manager, should for any reason cease to be a party to this contract, the remaining parties agree to immediately appoint some other person to act as agent and continue the agent in this way throughout the life of the contract.''

Thereafter, from time to time, owners of property thus served sold portions of such property. The first of these conveyances was one from B. L. Lemley, who sold his land and interest in the water line to E. L. Romans, who did not become and is not a party to this litigation.

Ed. L. Clark sold three lots on portions of his land and his purchasers made connections with the water line, and Clark testified that one of the purposes for establishing this water line was to induce purchasers to buy land which could be serviced from this water line.

One of Clark's purchasers was a man named Butler, who sold to another named Webster, who sold same to

Emma and John Butler, who, in turn, sold to Josephine Morrow on May 29, 1936, and Mrs. Morrow sold a portion of the land she had purchased to Tilton and his wife. It appears that Mrs. Morrow had used water without objections on the part of anyone.

It also appears that the Butlers now have no interest in this land, they having conveyed a part of their land to one Charles Clark, and the remainder to Mrs. Morrow. The Butlers conveyed to Mrs. Morrow by a warranty deed which "Retained an undivided one-half interest in the water line which connects with the above-described property, and runs to other property, this condition to be binding on the heirs and assigns of said grantee or grantor." This conveyance was of six acres of land described by metes and bounds, "containing 6 acres, be the same more or less."

Mrs. Morrow subdivided the remaining portion of her land into three parts, one of which she sold to Shirley, another to Cox, and a third part to Ora L. Tilton and Effie, his wife. One and one-half acres were conveyed to the Tiltons by Mrs. Morrow, and in addition to this deed to this land, Mrs. Morrow executed to the Tiltons a "deed for water line," conveying "all my right, title, claim or interest in and to a certain water line connecting with the water mains or system of the city of Fayetteville and running to and upon that certain tract of land conveyed to me by Emma Butler and John E. S. Butler, her husband. . . ."

After obtaining these two deeds from Mrs. Morrow the Tiltons attached a hydrant to the water line on the land they had purchased. Objection was made to this connection, and a suit was filed by Ed. L. Clark and Allen Davis, who are two of the parties who made the original contract with the City Water Works, in which John E. S. Butler joined as a party, praying a mandatory injunction requiring the Tiltons to sever this connection with the water line.

From what has been stated Butler has passed out of the case, but both Clark and Davis continued to own land serviced by the water line.

There appears to be no question, and none is raised here, about the right of the parties to construct, at their own cost, a water line for their exclusive use, to which another may not join without their consent. The case of *Kittrell* v. *Angelo,* 170 Ark. 982, 282 S. W. 363, so holds.

As has been said, the agreement hereinabove referred to with the City Water Plant appears to require the consent of the city plant before additional connections with the private line be made, but, as has also been said, the City Water Plant is not a party to this litigation and no showing is made that the City Water Plant interposes any objections.

The agreement hereinabove copied, signed by the parties who contracted with the City Water Plant, constituted Ed. L. Clark as their agent, "for the purpose of transacting business with the City Water Plant, regar" ing repairs, new connections, discontinuance of service, or any other business necessary to be transacted between the parties hereto." The parties to this agreement have, by their conduct, placed their own interpretation upon the meaning and effect of this four-party agreement, and that interpretation is that no restrictions had been placed upon them or any of them to execute conveyances for all or any part of their land, which conveyances carried the right to their grantees to make connections with this private water line. Clark, who had been constituted manager for all the parties, testified that the purpose of the installation of the water line was to enable the owners of the land which it would service to sell the lands, and he had, by three separate conveyances, exercised that right. So, also, had the other owners, except Davis, and we think all the four contracting parties had the same and equal right to sell their land and convey the water rights attached thereto. Mrs. Morrow acquired the interest of one of these original contracting parties, and we think it inequitable that her grantee should be denied a right to sell and convey, which all the other parties, except Davis, had exercised, and, so far as this record shows, without objection on the part of Davis or anyone else.

It is said that the Tiltons are asking to be furnished water for which others will pay. This statement is ambiguous and we may not be sure what was intended by this statement. If it means that the Tiltons have made a connection which enables them to use water that does not pass through a meter, they are doing this wrongfully and without authority, and may be required to pay therefor in another proceeding. But if the statement means, as we interpret it, that they are being allowed to use water, passing through this private line, for which they paid no part of the construction cost, it may be answered that it must be presumed, especially in the absence of proof to the contrary, that their grantor had paid a proper and proportionate part of the construction cost.

The complaint was dismissed as being without equity, and from that decree is this appeal. We think the decree conforms to the equities of the case and it is, therefore, affirmed.

### On Rehearing

It is pointed out in the petition for rehearing that the Tiltons have been using water which passed through the Butler meter without paying therefor. This fact is conceded, but is explained by saying that the water company refused to install a meter for the Tiltons until their right to make the connection was adjudged, which right, as appears from the original opinion, had been denied, but the Tiltons offered to pay and were at all times, and are now, willing to pay for any water they use.

There is no testimony in the record from which we can determine what this payment should be and the cause must, therefore, be remanded to ascertain the sum to be paid by the Tiltons. But inasmuch as no judgment was prayed in the court below, this will be done without a re-assessment of the costs, but the Tiltons will be required to pay any costs incident to the ascertainment of the amount of water for which they should pay.

The Tiltons will be required to have installed for their separate use a meter to measure the water they use, and to do so as soon as the water company is able

to make the installation of the meter, and if they fail to do so within a reasonable time, an injunction should be issued restraining them from using the water passing through the Butler meter.